JON 0. NEWMAN, Circuit Judge:
This appeal by the Government in a criminal case raises the issue whether an indictment may simultaneously charge bank *780 fraud, in violation of 18 U.S.C. § 1344 (1988), and making false statements to a bank in connection with loan applications, in violation of 18 U.S.C: § 1014 (1988). The issue arises on the Government’s appeal from the February 13, 1992, order of the District Court for the Southern District of New York (Louis L. Stanton, Judge), ruling that the indictment of defendant Edwin Seda was multiplicitous and requiring the prosecution to elect between the charges. We affirm.
Facts
Seda was an officer of National Westminster, USA (“the bank”). He was indicted on thirteen counts, of which eight are in-issue on this appeal. Counts Two through Five charged that Seda violated section 1344 by committing bank fraud by assisting in preparing and submitting to the bank fraudulent loan applications and causing the bank to issue loans pursuant to the fraudulent applications. Counts Six through Nine charged that Seda violated section 1014 by making false statements to the bank for purposes of influencing its actions; the false statements are the samé fraudulent loan applications identified in Counts Two through Five.
Judge Stanton ruled that the indictment was multiplicitous and ordered the Government to elect between the two sets of counts. Endeavoring to apply Blockbur-ger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the District Judge agreed with the Government that section 1014 requires a false statement, an element not required for conviction under section 1344. However, he disagreed with the Government’s further claim that section 1344 requires an element not required for section 1014. In Judge Stanton’s view, the possibility that a false statement under section 1014 would fail to qualify as a “scheme or artifice” under section 1344 “is too remote to constitute an extra requirement” of section 1344. From the order to elect, which effectively dismisses a portion of the indictment, the Government brings this appeal. See 18 U.S.C. § 3731 (1988).
Discussion
The version of section 1014 applicable to this case provides, in pertinent part:
Whoever knowingly makes any false statement or report ... for the purpose of influencing in any way the action of ... any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, ... upon any application ... or loan ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.
18 U.S.C. § 1014 (1988).[1]
The version of section 1344 applicable to this case provides, in pertinent part:
(a) Whoever knowingly executes, or attempts to execute, a scheme or artifice—
(1) to defraud a federally chartered or insured financial institution; or
(2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or in-. sured financial institution by means of false or fraudulent pretenses, representations, or promises, shall be fined not more than $10,000, or imprisoned not more than five years, or both.
18 U.S.C. § 1344 (1988).[2]
To determine whether an indictment is multiplicitous, i.e., “charges a single offense in more than one count,” United States v. Maldonado-Rivera, 922 F.2d 934, 969 (2d Cir.1990), cert. denied, — U.S. —, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991), we inquire whether each of the provisions defining the offenses “unambiguously authorizes punishment for a violation of its terms,” whether “the two offenses are sufficiently distinguishable from one another that the inference that Congress intended to authorize multiple punishments is a reasonable one,” and, if so, whether the legislative history evidences a contrary legislative intent. See United States v. Fiore, 821 F.2d 127, 130 (2d Cir.1987); *781 United States v. Nakashian, 820 F.2d 549, 551 (2d Cir.), cert. denied, 484 U.S. 963,108 S.Ct. 451, 98 L.Ed.2d 392 (1987). The statutes are examined under the Blockburger test, 284 U.S. at 304, 52 S.Ct. at 182, to determine if each requires proof of a fact that the other does not.
The Government contends that in applying the Blockburger test we must examine only the terms of the statutes, rather than the allegations of the indictment, an approach that we have recognized is correct “[i]n general.” See United States v. Fiore, 821 F.2d at 131 n. 5. However, like most principles that are true “in general,” this one is not always true. The Supreme Court has recognized that the rigid “look-only-at-the-statute” approach is inappropriate in some cases where one of the statutes covers a broad range of conduct. Thus, in Whalen v. United States, 445 U.S. 684, 694, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980), the Court rejected the Government’s claim that a rape charge and a felony murder charge based on the death of the rape victim constituted offenses sufficiently separate to support consecutive punishments. The Court recognized that the statutory offense of felony murder could be proven in some cases by conduct wholly unrelated to a rape, e.g., a robbery, but ruled nevertheless that separate offenses were not present because “[i]n the present case ... proof of rape is a necessary element of proof of the felony murder.” Id. at 694, 100 S.Ct. at 1439. See Brown v. Ohio, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977) (citing In re Nielsen, 131 U.S. 176, 190, 9 S.Ct. 672, 677, 33 L.Ed. 118 (1889), and Nielsen’s approval of State v. Cooper, 13 N.J.L. 361 (1833), which held that a conviction for arson barred a subsequent felony murder indictment based on the death of the man killed in the fire); United States v. Kragness, 830 F.2d 842, 863-64 (8th Cir.1987) (applying similar analysis to RICO conspiracy).
We recognize that some statutes covering a broad range of conduct can apply simultaneously with more focused statutes to result in multiple punishment for one act. For example, in United States v. Woodward, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985), the Supreme Court upheld consecutive punishments for a negative response on a currency disclosure form, ruling that separate offenses were created by 18 U.S.C. § 1001 (1988) and 31 U.S.C. §§ 5322, 5316(a) (1988) (formerly 31 U.S.C. §§ 1058, 1101(a)). Section 1001 was construed to punish nondisclosure of a material fact by any trick, scheme, or device, and section 5322 to punish, among other things, failure to file the report required by section 5316(a) for those transporting more than $5,000 (now $10,000) into or out of the United States. The Court pointed out that conduct violating section 5322 would not necessarily violate section 1001 because “[a] person could, without employing a ‘trick, scheme or device,’ simply and willfully fail to file a currency disclosure report.” Id. at 108; 105 S.Ct. at 612. Moreover,-the Court relied on legislative history indicating that, in connection with the enactment of section 5322, the attention of Congress was specifically drawn to the existence of section 1001. Id. at 109, 105 S.Ct. at 613. Finally, the Court emphasized that Congress’s intent to allow punishment under both statutes was shown by the fact that the statutes were directed to separate evils. Id.
We think the pending case is more akin to Whalen than to Woodward and that Judge Stanton was correct not to look rigidly at the language of the two provisions at issue, but instead to consider the allegations in this case. Section 1344 is a multifaceted statute, perhaps not quite as broad as the felony-murder offense provision considered in Whalen, but nonetheless broad. Unlike Woodward, we have here no realistic likelihood of violating the narrow provision, section 1014, without also violating the broad provision, section 1344. The Government had suggested to Judge Stanton, and reasserts here, that section 1014 could be violated without violating section 1344 and offers the example of a person who seeks to avoid a contract to purchase a home by submitting to a bank a false loan application, understating his finances in order to induce the bank to deny his mortgage application. Judge Stanton properly *782 considered the possibility of this úse of section 1014 “remote.”
In this case, the Government claims that Seda violated section 1014 by submitting false loan applications and that his submission of these applications constituted bank fraud in violation of section 1344. The false loan applications are simply a species of bank fraud, just as the killing of the rape victim in Whalen was a species of felony murder.[3]
Moreover, unlike Woodward, we have no indication in the legislative history that Congress was likely adding the new provision as a supplement to the old. On the contrary, the legislative history of section 1344 reveals an intention to assure that federal criminal jurisdiction was available for banking offenses that might not be covered by section 1014 or other federal fraud offenses. The Report of the Senate Committee on the Judiciary noted that check-kiting schemes could not be prosecuted under section 1014 because of the Supreme Court’s ruling that a check was not a “statement,” Williams v. United States, 458 U.S. 279, 284-90, 102 S.Ct. 3088, 3091-95, 73 L.Ed.2d 767 (1982), within the meaning of that section. See S.Rep. No. 225, 98th Cong., 2d Sess. 378 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3518. The Committee also noted that the mail and wire fraud provisions, 18 U.S.C. §§ 1341, 1343, were not adequate to reach some instances of bank fraud because of the ruling in United States v. Maze, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), placing limits on the jurisdictional reach of those statutes. See Senate Report at 377, 1984 U.S.C.C.A.N. at 3518. As Judge Stanton concluded, “The broad language of § 1344 was intended to insure that defendants could not slip through the cracks of the statutory scheme. It does not suggest that those who violate § 1014 may also be guilty of a different crime under § 1344.”
Nor do we discern with respect to sections 1014 and 1344 an effort to combat evils as distinct as those that the Supreme Court concluded in Woodward were attacked by sections 1001 and 5322. Here, Congress is making sure that those who submit false loan applications are punished once, if not under the previously enacted false loan application statute, then surely under the newly enacted bank fraud statute. For all of these reasons, we conclude that only one offense is involved.
In some circumstances, it might be appropriate to permit the Government to include in one indictment counts under two statutes alleged to be capable of defining separate offenses, but to require either an election before the case is submitted to the jury, or, if the evidence warrants, a lesser included offense instruction. In this case, however, we see no basis for either approach. An election of counts before trial was the proper remedy.
The order of the District Court is affirmed.

. The penalties are increased in the current version. 18 U.S.C. § 1014 (Supp. II 1990).

. The penalties are increased in the current version. 18 U.S.C. § 1344 (Supp. II 1990).

. In Whalen, the rape offense was lesser included within the felony murder offense since the death of the victim was an extra element of the felony murder offense. In the pending case, the false loan application violation is not merely lesser included within the bank fraud offense, but is, as charged, the same offense, because there is no element to be proved that escalates one offense into the other. •